(Reap. Dec. 10665)

AMERICAN BRAVO CO. v. UNITED STATES

Entry No. 12607, etc.

(Decided January 21, 1964)

*Stein & Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

DONLON, Judge: Seven appeals to reappraisement have been consolidated for purposes of trial. The appeals were submitted before Judge Johnson in Los Angeles, and thereafter resubmitted and assigned to me by order of Chief Judge Oliver.

The official papers are not in evidence. No testimony was adduced, and there is little documentary evidence to prove what the merchandise is. The only record, in that respect, is a colloquy between counsel on trial in Los Angeles, as follows:

MR. BRAVERMAN: Right. Well, it is understood, I think, between all the parties that the merchandise before the Court, on the entries involved on these appeals, all have the hangers, and are all plaques.

MR. SHOSTAK: That is right, all the merchandise before the Court are brass picture plaques, and plaintiff's theory will be developing as to whether or not these articles are the same when they do or do not have a hook. [R. 4.]

Inasmuch as plaintiff's brief asserts that the merchandise consists of brass picture plaques and defendant's brief asserts that it consists of brass and copper plaques, I accept the quoted statement, however informal, as intended to stipulate the fact that the merchandise in issue is brass picture plaques, with hangers, or hooks. I find no evidence adduced in support of defendant's reference to copper, but this is not relevant to appraisement.

Plaintiff's statement under rule 15(d) was filed on the day of trial. It is as follows:

1. The statutory basis of value contended for by the plaintiff is the export value as defined in Sec. 402(d) of the Tariff Act of 1930 as amended by the Customs Administrative Act of 1938.

2. The unit values claimed to be the correct dutiable values of the merchandise are the invoiced unit values less a 3¾% cash discount.

Defendant failed to file its rule 15(d) statement. Plaintiff's counsel essayed to waive filing thereof, but the record fails to show that the presiding judge waived filing. Waiver of compliance with court rules is not, of course, a prerogative of parties.

From statements of counsel in open court, it appears that this merchandise was appraised on the basis of foreign value; that defendant's contention is that the appraised values are the foreign value; that plaintiff's contention is that there is no basis for finding a foreign value, that the proper basis of appraisement is export value, and that export value is the invoice unit values, less 3¾ percent cash discount, plus export packing, where so invoiced.

It appears from the entry papers that this merchandise was exported from England during a period from September 17, 1955, to April 25, 1957. If so, no question arises under the Customs Simplification Act of 1956 and the final list thereunder (T.D. 54521).

Plaintiff introduced two affidavits into evidence, verified in England on August 24, 1962, and September 4, 1962, respectively, by Kenneth B. Tolley. Mr. Tolley describes himself as the export manager of Greenland Manufacturing Co. of Birmingham during the period from January 1, 1955, to January 31, 1961. (Exhibit 1.) He states that his company did not sell or offer for sale any "brass picture plaques" in the home market in England from October 1, 1955, to June 1, 1957; that, to the best of his knowledge, no manufacturer of brass picture plaques in England offered or sold them for home consumption; and that there was no market because of the 60 percent luxury tax "imposed upon the ultimate purchaser of such purely decorative merchandise." However, Greenland and others manufactured what Mr. Tolley called "brass sweet dishes," which had no hooks or any other provision for hanging them on the wall, and because these "brass sweet dishes" were utilitarian rather than purely decorative, they were subject to British Purchase Tax of only 30 percent and, hence, were salable and were sold in England.

Mr. Tolley appended a pricelist, No. ER57, which he states shows the prices of brass wall plaques that were offered for sale and sold for export to the United States, and he says that "a number of sales" were made to plaintiff. He nowhere clearly identifies his company as seller of the instant merchandise, nor is there other evidence in the

proofs offered of record that this is so. The invoices, however, so indicate.

Mr. Tolley further states that wall plaques "were freely offered and sold to all purchasers for exportation to the United States at list price, less a cash discount of 3¾% . . . ."

Although Mr. Tolley says that his pricelist No. ER57 (appended to his affidavit of September 4, 1962, but referred to also in his earlier affidavit of August 24, 1962) was not circulated in the home market in England, this pricelist, nonetheless, contains the following:

Terms:  Home:  delivered in England, 3¾% prompt cash.

      Export:  delivered English port, 3¾% prompt settlement.  chests extra at 10/– each.

Plaintiff also introduced the affidavit of Mr. Ian King MacDonald, who says that he became associated with the Greenland Manufacturing Co. in 1958 and has been its export manager since February 1, 1961. Inasmuch as the latest export of merchandise within these consolidated appeals would appear from the entry papers to have been in April 1957, Mr. MacDonald's statement is that of one not shown to have had any personal knowledge of the matters as to which he purports to testify. Indeed, he does not claim that he has such knowledge. His affidavit, as it has been introduced into evidence, lacks probative value as to transactions of Greenland at least prior to 1958, the year in which he first entered the employment of Greenland Manufacturing Co.

On the record before me, there are gaps in plaintiff's proofs. It is difficult to ascertain whether the merchandise in issue is included among the items of the pricelist which plaintiff introduced into evidence; if they are included, there is no clear identification of the involved items. Even if identity of merchandise items had been shown, the court has the responsibility of weighing probative value of the statements by Mr. Tolley, couched in language that closely follows the statutory formula of the United States tariff act, against his company's pricelist which shows contemporaneous offers to sell for home delivery in England on specified terms, as well as offers to sell for export on which plaintiff relies.

Defendant introduced two reports into evidence. One is by Treasury Agent John M. Doyle, dated in London on March 15, 1956, and addressed to the Division of Investigations in the Bureau of Customs, Washington, D.C. (Exhibit A.) The other report, similarly addressed, is by Treasury Representative William P. Hunton, dated in London on May 23, 1957. (Exhibit B.) There are attachments to each report.

I do not discuss the details of defendant's proofs, because the weight of plaintiff's proofs has not established the first requirement of plain-

tiff's case, namely, proofs negativing the existence of a basis for foreign value of this merchandise. A pricelist freely offering identical items both for home sale and for export is more persuasive of such offerings, than is the statement to the contrary in Mr. Tolley's affidavits. While affidavits are properly allowed in evidence, under statutory authority, the weight to be given them is for the court to determine. There is no opportunity for cross-examination of an affiant. There is not even opportunity for the court to satisfy itself that the witness clearly understands the purport of statements made in statutory language, with which, as an alien, he may or may not be familiar. The pricelist, on the other hand, speaks in the language of commerce as of the very time here in issue. It is unequivocal in presenting, on a pricelist basis, offers to sell in the home market, and it states what the terms of those offers are.

As to plaintiff's contention that the articles sold for export and in the home market were different, there is nothing in the pricelist plaintiff introduced which supports this contention. Nor are there other proofs. There are many items offered by the pricelist. Which pricelist items are the items here involved, plaintiff has not shown. What plaintiff's pricelist does show, is that all of the listed items were offered in England both for "home delivery" and for export.

Under section 402(c), the price "at which such or similar merchandise is freely offered for sale for home consumption" is the basis of foreign value. On plaintiff's own proofs, it would appear that *such* merchandise was thus freely *offered*.

Plaintiff's brief does not discuss the pricelist which it introduced. Plaintiff bases its argument, in part, on a pricelist, dated April 29, 1957, attached to one of defendant's exhibits. That date is subsequent to the date of exportation of the merchandise covered by the latest of the entries before us, and, therefore, it is not evidence of offerings concurrent with the several exportations.

Plaintiff does not challenge the amount of the foreign values as found by the appraiser, and has offered no evidence as to amount. Therefore, the presumption that the appraised values are correct has not been overcome.

I find as facts:

1. That the merchandise, subject of these appeals for reappraisement, consists of brass picture plaques, with hangers, or hooks, exported from England.

2. That, at the times of exportation, such or similar merchandise was freely offered for sale to all purchasers for home consumption in the principal market in England.

3. That entry was, in all cases, prior to the effective date of the Customs Simplification Act of 1956.

4. That the merchandise was entered on the basis of export value, under section 402(d) of the Tariff Act of 1930; and was appraised on the basis of foreign value, under section 402(c).

5. That the record does not establish a statutory basis of value for such or similar merchandise, under section 402, different from the appraised values.

I conclude as matter of law:

1. That plaintiff has failed to overcome the presumptively correct appraised values of the brass picture plaques, subject of these appeals, and that the values thereof are the values returned by the appraiser.

Judgment will be entered accordingly.